NOT FOR PUBLICATION                    (Docket Nos. 22, 30, 37, 38, 39, 42)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____ :
                                  :
RAYMOND BEY,                      :
                                  :
          Plaintiff,              :      Civil No. 04-6186 (RBK)
                                  :
     v.                           :      **OPINION**
                                  :
DAIMLER CHRYSLER SERVICES OF      :
NORTH AMERICA, LLC, et al.,       :
                                  :
          Defendants.             :
_____ :

**KUGLER**, United States District Judge:

     This matter comes before the Court on motions by Plaintiff pro se Raymond Bey ("Plaintiff") (1) to reconsider this Court's Order of July 8, 2005, (2) to recuse this Court from his case, (3) to supplement a motion for summary judgment, and (4) for summary judgment of his claims, and (5) motion by Defendants DaimlerChrysler Services North America, LLC, I. Daniel Ibrahim, Tracy Lane, Kim Nguyen, and DaimlerChrysler Corporation (collectively, "DaimlerChrysler Defendants") for summary judgment of Plaintiff's claims against them, and (6) motion by Lyons, Doughty & Veldhuis, P.C., and Hillary Veldhuis (collectively, "Veldhuis Defendants") for summary judgment.

**I.    Background**

**A.    Purchase of Vehicle and Replevin Action**

This case arises from Plaintiff's purchase of a 2002 Mercedes-Benz ML 500 SUV ("Vehicle") from Mercedes-Benz of Cherry Hill on December 20, 2001. The total sale price of the vehicle was $65,258.40. (DaimlerChrysler Retail Investment Contract, DaimlerChrysler Cert., Ex. A., DaimlerChrysler Mot. Summ. J., filed Sept. 30, 2005.) Plaintiff made a down payment of $10,500.00, and financed the $40,835.90 balance through a retail investment contract ("Contract"). The Contract provided for an annual percentage rate of 11.99% and a finance charge of $13,922.50. Plaintiff was to make sixty monthly payments of $912.64, beginning February 3, 2002. After a merger with Mercedes-Benz Credit Corporation, DaimlerChrysler Services North America, LLC ("DaimlerChrysler"), was assigned the Contract.

DaimlerChrysler initially repossessed the Vehicle on or around August 8, 2003, after Plaintiff failed to make certain required payments. (DaimlerChrysler Defs.' Cert. ("DaimlerChrysler Cert."), DaimlerChrysler Defs.' Mot. Summ. J., filed Sept. 30, 2005, ¶ 11, 12.) Plaintiff reinstated the Contract and regained possession of the Vehicle on August 29, 2003. (DaimlerChrysler Cert. ¶ 13.) Although they are not incorporated into any of the Complaint's legal counts, Plaintiff states several grievances related to his attempts to reclaim his

Vehicle, including allegedly exorbitant towing and storage fees and a personal reference requirement Plaintiff had to satisfy before the Vehicle was returned. Plaintiff has made no payments since the payment to reinstate the Contract on August 22, 2003, and is presently in default of the loan. (DaimlerChrysler Cert. ¶ 14, 15.)

DaimlerChrysler hired the Veldhuis Defendants to file a replevin action in New Jersey Superior Court on August 31, 2004. (Veldhuis Defs.' Cert. ("Veldhuis Cert."), Veldhuis Defs.' Mot. Summ. J., filed Sept. 30, 2005, ¶ 2-17.) The Veldhuis Defendants sent Plaintiff a demand letter on September 1, 2004, and filed a Complaint and Order to Show Cause with the Superior Court of New Jersey on September 7, 2004. Plaintiff claims that a tow truck driver named "Ray" attempted to repossess the Vehicle on September 9, 2004, and disclosed information about Plaintiff's debt to one of Plaintiff's neighbors. The Veldhuis Defendants received a letter from Plaintiff on September 21, 2004, claiming that the underlying contract was fraudulent, and responded with a letter on September 22, 2004, advising Plaintiff that DaimlerChrysler intended to proceed with the replevin action. Defendants sent Plaintiff a verification of debt on January 27, 2005, and ultimately served Plaintiff with the replevin action by certified mail dated February 24, 2005.

2.  **Procedural History**

3

Plaintiff filed suit in this Court on December 16, 2004, raising numerous claims against several defendants, including Mercedes-Benz USA, LLC, Mercedes-Benz of North America, and Mercedes-Benz of Cherry Hill, (collectively, "Mercedes-Benz Defendants"), the DaimlerChrysler Defendants, the Veldhuis Defendants, and a tow truck driver named "Ray." The DaimlerChrysler Defendants and Mercedes-Benz Defendants moved for dismissal in February 2005, and Plaintiff filed his first motion for summary judgment on May 27, 2005.

This Court granted and denied in part Defendants' motions in its Order of July 8, 2005 ("July Order"). The Court dismissed the claims against the Mercedes-Benz Defendants in their entirety, since the Mercedes-Benz Defendants' sole participation in the events at issue was to sell the Vehicle to Plaintiff, and Plaintiff did not challenge the propriety of the actual sale.

With regard to the DaimlerChrysler Defendants, the Court dismissed Plaintiff's claims under the Truth in Lending Act ("TLA") and Equal Credit Opportunity Act ("ECOA") as time-barred. The Court also dismissed Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA") concluding that the DaimlerChrysler Defendants do not constitute "debt collectors" for the purpose of the Act. Plaintiff's RICO claims were dismissed for Plaintiff's failure to allege an interest rate that was usurious under the law, and Plaintiff's conspiracy claim was

4

dismissed for failure to allege "a combination of two or more persons acting in concert." <u>Morgan v. Union County Bd. of Chosen Freeholders</u>, 268 N.J. Super. 337, 364 (App. Div. 1993). The Court denied the DaimlerChrysler Defendants' motion to dismiss Plaintiff's fraud and discrimination claims because Plaintiff's allegations stated a claim upon which relief could be granted.

The Court addressed Plaintiff's first motion for summary judgment in its Order of August 29, 2005 ("August Order"). Plaintiff requested summary judgment on the grounds that the alleged fraud is clear on the face of the financing Contract. The bulk of Plaintiff's claims are founded on his allegation that the $912.64 monthly payment is incorrect, reflecting a 12.21% interest rate, rather than the 11.99% listed on the Contract. According to Plaintiff, the amortization of $40,835.90, financed at an annual interest rate of 11.99% over 60 monthly payments should result in a monthly payment of $908.17, not $912.64.

In denying Plaintiff's motion, this Court concluded that the $4.47 discrepancy is attributable to the interest accrued during the 45 day period between the initiation of the contract on December 20, 2001, and Plaintiff's first payment on February 3, 2002. The $908.17 figure assumes an initial payment 30 days from the loan date, thereby failing to take into consideration the interest accrued over the course of the additional 15 days. Because the $912.64 figure was accurate and explicitly provided

on the Contract, there is no evidence that Defendants committed any fraud. The Court ordered Defendants to file motions for summary judgment of the remaining claims.

Plaintiff filed a motion for reconsideration of the July Order on July 29, 2005, and a motion for recusal on August 31, 2005. The Veldhuis and DaimlerChrysler Defendants filed separate motions for summary judgment on September 30, 2005, and Plaintiff filed a motion to supplement a motion for summary judgment on September 29, 2005,[1] and a motion for summary judgment on October 31, 2005. Although Plaintiff did not file an opposition to Defendants' motions for summary judgment, his motion for summary judgment will be treated as an opposition for the purpose of addressing Defendants' motions.

## II.  Motion for Recusal

Plaintiff now moves for recusal of this Court. Although Plaintiff does not specify the legal grounds for his demand, his motion will be considered under 28 U.S.C. §§ 455 and 144, which establish the standard for recusal of district court judges. Section 144 requires recusal where the moving party files an affidavit that is "legally sufficient to support a charge of bias

---

[1] Because there was no summary judgment motion outstanding on September 29, 2005, Plaintiff's motion to supplement will be denied.

6

or prejudice."[2] <u>Cooney v. Booth</u>, 262 F. Supp. 2d 494, 501 (E.D. Pa. 2003) (citing <u>Mims v. Shapp</u>, 541 F.2d 415, 417 (3d Cir. 1976)). To be "legally sufficient," the facts must "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." <u>Id.</u> (quoting <u>Berger v. United States</u>, 255 U.S. 22, 33-34 (1921)). The court must accept all facts alleged in the affidavit as true, but need not accept the moving party's conclusions, conjecture, speculation or surmises. <u>Id.</u>

Under § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Such disqualification is crucial to maintaining "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." <u>Alexander v. Primerica Holdings, Inc.</u>, 10 F.3d 155, 162 (3d Cir. 1993) (quoting <u>In re Sch. Asbestos Litig.</u>, 977 F.2d 764, 776 (3d Cir. 1992)). Consequently, even where the judge is not "subjectively biased or prejudiced," he must recuse himself under § 455 "so long as he appears to be

---

[2] More expansively, section 144 provides for recusal "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144.

so." <u>In re Community Bank of No. Virginia</u>, 418 F.3d 277, 320 (3d Cir. 2005) (quoting <u>United States v. Bertoli</u>, 40 F.3d 1384, 1412 (3d Cir. 1994)). In other words, "if a 'reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality' . . . then the judge must recuse." <u>In re Community Bank</u>, 418 F.3d at 320 (quoting <u>United States v. Antar</u>, 53 F.3d 568, 574 (3d Cir. 1995)).

Although the law demands recusal both where a reasonable man would question the judge's fair mindedness and where a party files an affidavit setting forth specific allegations of partiality, Plaintiff has provided no facts suggesting a bias or prejudice that would merit recusal. While Plaintiff has not filed an affidavit in support of his motion, the Court will treat the motion itself as an affidavit in support and will accept as true all facts alleged in the motion. Plaintiff's motion states in its entirety:

> I am the Plaintiff in the above referenced matter. I remember as a child hearing the stories of slave mothers who killed their children at birth so they would not have to grow up in oppression. It is distressing beyond words when you realize that racism is so rampant in this country it is as American as the flag. In the 1920's when Prophet Noble Drew Ali wrote, humanity in general is left at the mercy of those who have no mercy in them it is so appropriate for today. No place is this more evident than in the court system.
>
> It is the consensus reality that African Americans know that we are treated unfairly by the judiciary. We are certainly intelligent enough to understand when we are being mistreated. I knew in this case when the Rule 26 conference was cancelled by Judge Donio that this case

was being railroaded through the courts. The
Defendants' Counsel did not submit Rule 26 Disclosures
on time. They have not submitted discovery documents or
honored discovery requests. They have been content to
sit back and let you, Judge Kugler, eat away at the
case and then issue an order for them to submit summary
motions within 30 days. So goes Judicial Integrity.

Enclosed is a motion for recusal. Since the beginning
of this case I have known that you would not be fair.
First, you have not held one hearing. Second you don't
even consider what I have written. You instead deal in
the point of view you want to reflect. It is not about
justice, it is about supporting a racist point of view.
So this is your motion for recusal and I will proceed
under Federal Law to have you removed from the bench.
If you thought I was going to sit back while you try to
turn an obvious case of fraud into a mathematical error
then you are dreaming. The New Jersey Attorney General
even found the Defendants guilty of overcharging, but I
realize that none of this matters to you. It is about
the racist agenda which you support. I don't support it
and I am determined to fight it. Too many baby boys had
to lose their lives so they would not grow up in
oppression and injustice. I have grown up in it and I
am going to fight it for their and my sake. I trust you
will recuse yourself because I have absolutely no
confidence in you to be fair at all. That should be
enough.

The thrust of Plaintiff's request for recusal appears to be

his belief that the Court's actions in the adjudication of his

case were tainted by racial bias. To support his accusations of

racism, Plaintiff points to the Court's Opinions granting and

denying in part Defendants' motions to dismiss and denying

Plaintiff's motion for summary judgment, the Court's Order to the

Defendants to file motions for summary judgment, the cancellation

of the scheduled Rule 26 conference by Magistrate Judge Ann Marie

Donio, and the absence of any hearings or oral argument on any

matter presented in his case.

Although the possibility of racism in the judicial system is not to be taken lightly, Plaintiff's dissatisfaction with the procedural disposition of his lawsuit is not grounds for recusal. As the Third Circuit observed, "[b]ecause the focus is on the source of the judge's views and actions, 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" In re Community Bank, 418 F.3d at 320 (noting that even "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"). Plaintiff has identified no facts indicative of a racial motivation or bias by the Court, nor has he set forth any fact suggesting that this Court has treated his case differently than it would treat any other case under the circumstances. Because Plaintiff's allegations appear to be mere conjecture that would not inspire a reasonable person to "harbor doubts" of the Court's impartiality, Plaintiff's motion for recusal will be denied.

## III. Motion for Reconsideration

Plaintiff moves for reconsideration of this Court's July and August Orders, denying Plaintiff's motion for summary judgment and granting in part and denying in part motions by the Mercedes-Benz Defendants and the DaimlerChrysler Defendants.

A motion for reconsideration pursuant to Federal Rule of Civil Procedure ("Rule") 60(b)(6) permits a court to relieve a party from a final judgment, order, or proceeding for "any other reason justifying relief," where the petitioner can present "something new or something overlooked by the court in rendering the earlier decision." Chiniewicz v. Henderson, 202 F. Supp. 2d 332, 334 (D.N.J. 2002) (citing Hernandez v. Beeler, 129 F. Supp. 2d 698, 701 (D.N.J. 2001) (citations omitted). A motion for reconsideration is not an opportunity for a party "to introduce legal theories that a party failed to include in its initial motion"; consequently, "where evidence is not newly discovered or there exist [ ] no manifest errors of law, the motion for reconsideration must be denied because a motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised in connection with an earlier motion." Id. (quoting Hunterson v. DiSabato, 137 F. Supp. 2d 529, 549 (D.N.J. 1998).

As an initial matter, Plaintiff contests the treatment of Defendants' motions to dismiss as unopposed and argues that the Court failed to consider his letter brief filed July 7, 2005. However, Plaintiff's brief was filed far too late to merit consideration by the Court. Defendants' motions were filed on February 15, 2005, and February 18, 2005, respectively, establishing a return date of March 18, 2005. Pursuant to Local

Civil Rule 7.1, any opposition was due fourteen days prior to the return date. Plaintiff filed no motion to oppose out of time, and ultimately waited until the day before the Court entered its Opinion to file his letter brief, well over four months after Defendants filed the initial motions. Accordingly, Plaintiff's letter in opposition was untimely.

Plaintiff presents no newly discovered evidence or manifest errors of law sufficient to merit reconsideration under Rule 60(b). In his motion, Plaintiff argues that the Mercedes-Benz Defendants were improperly dismissed because they participated in the transaction as "distributors of the vehicle purchased by Plaintiff," because "[t]he financing contract benefitted them," and because they failed to address the alleged fraud after learning of Plaintiff's dispute. (Pl.'s Mot. Recons. at 6.) Plaintiff further contends that the statute of limitations did not run on his time-barred claims because the cause of action did not become "complete and present" until October 2004 when he wrote a letter to the editor of the Philadelphia Inquirer. However, the motion for reconsideration is not an opportunity for Plaintiff to compensate for his failure to file a timely opposition and raise arguments he could have raised previously. Chiniewicz, 202 F. Supp. 2d at 334. Plaintiff had ample opportunity to present these arguments before the Court issued its initial Opinion in July 2005, and is therefore barred from

bringing such arguments at this stage in the proceedings.

Plaintiff also offers new facts related to an African American woman in Florida who allegedly had the same issue with her contract. (Pl.'s Mot. Recons. at 8.) Although Plaintiff argues that this is a new discovery, Plaintiff does not explain how it could rectify any of the deficiencies in his Complaint or alter the reasoning underlying the July and August Orders. Accordingly, because Plaintiff's motion presents no newly discovered evidence or manifest error of law that warrants reconsideration, Plaintiff's motion for reconsideration must be denied.

**IV.  Motions for Summary Judgment**

**A.   Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either

13

(1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003). "If the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court must enter summary judgment in favor of the moving party." Heffron, 270 F. Supp. 2d at 69 (citing Anderson, 477 U.S. at 249-50).

**B.    DaimlerChrysler Defendants**

**1.    Fraud Claims**

The DaimlerChrysler Defendants move for summary judgment of Plaintiff's claim of fraud on the grounds that this Court's August Order conclusively established the legitimacy of the allegedly fraudulent $912.64 monthly payment figure. As explained above, Plaintiff's argument that his monthly payment should be $908.17 wrongly assumes a period of only 30 days between the inception of the Contract and Plaintiff's initial payment. This calculation therefore fails to take into consideration the interest accrued in the additional 15 days between the initiation of his Contract on December 20, 2001, and Plaintiff's first monthly payment on February 3, 2002.

In response to Defendants' motion, Plaintiff claims that February 3, 2002, the date of the first payment, was actually 41 days from the inception of the Contract, rather than 45 days. To support this argument, Plaintiff reasons that "if you subtract the 3 days we all have to rescind a contract" and do not count February 3--the date the payment was made--the total is 41 days. However, Plaintiff provides no legal basis for his assumptions that interest would not accrue on those four days. Nor does he provide evidence that the 45 day period was fraudulent when the initial payment date of February 3, 2002, was expressly provided for in the Contract. Accordingly there is no evidence supporting

Plaintiff's claim of fraud, and the DaimlerChrysler Defendants
are entitled to summary judgment.

**2.   Discrimination Claims**

The DaimlerChrysler Defendants also request summary judgment
of Plaintiff's discrimination claim since a claim that Plaintiff
is being charged 12.21% instead of 11.99% cannot succeed after
this Court's August Order. Therefore, to the extent that
Plaintiff is alleging discrimination on the grounds of a
fraudulent interest rate of 12.21%, Defendants' motion for
summary judgment is granted.

However, the DaimlerChrysler Defendants do not address
Plaintiff's allegations of a discriminatory "markup" in his
initial interest rate. In particular, Plaintiff claims that
Defendants were offering rates of "less than 6%" to other
customers, but offered him a rate of 11.99% because he is African
American. (Pl.'s Compl. at 8, ¶ 3.) The DaimlerChrysler
Defendants do not discuss this claim in their motion.
Accordingly, to the extent that Plaintiff alleges that the rate
of 11.99% constituted discrimination, the DaimlerChrysler
Defendants' motion for summary judgment is denied without
prejudice. The DaimlerChrysler Defendants will be ordered to file
a motion for summary judgment on this issue within fourteen days
of the Order accompanying this Opinion. Plaintiff will be granted
an additional two weeks to respond to Defendants' motion and show

16

cause why summary judgment should not be granted.

**C.   Veldhuis Defendants**

**1.   Claims for Fraud, Violations of Truth in Lending and Equal Credit Opportunity Acts, and Discrimination**

The Veldhuis Defendants request summary judgment of all claims related to the allegedly fraudulent Contract since they had no involvement with the Contract until August 31, 2004, when DaimlerChrysler hired them to conduct replevin proceedings against Plaintiff. The Veldhuis Defendants argue that they bear no legal accountability for a Contract they neither negotiated nor signed, and from which they drew no benefit.

Plaintiff does not address this argument, nor has he provided any evidence or alleged any fact indicating that the Veldhuis Defendants have committed fraud, unlawful discrimination, or violations of the Truth in Lending and Equal Credit Opportunity Acts. Accordingly, the Veldhuis Defendants are entitled to summary judgment of these claims.

**2.   Fair Debt Collection Practices Act**

Plaintiff alleges numerous FDCPA violations. In particular, he claims that the Veldhuis Defendants failed to send him a verification of debt, pursued communications and debt collection activities after he contested the debt, and left "continuous hang-ups, some 3 or 4 minutes apart" on his answering machine. (Pl.'s Compl. at 9-10.) Plaintiff also claims that "Ray," the tow truck driver, discussed the debt with Plaintiff's neighbor. The

17

Veldhuis Defendants request summary judgment on the grounds that none of their actions constitutes a violation of the FDCPA. Plaintiff does not oppose Defendants' arguments.

**a.   Pursuit of Debt Collection Activities**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). An attorney regularly engaged in debt-collection litigation on behalf of creditor clients is a debt collector for the purposes of the Act. Heintz v. Jenkins, 514 U.S. 291 (1995). Plaintiff argues that the Veldhuis Defendants violated the FDCPA by pursuing debt collection efforts even after Plaintiff notified Defendants of his dispute. 15 U.S.C. § 1692g(b) provides:

> If the consumer notifies the debt collector in writing
> within the thirty-day period . . . that the debt, or
> any portion thereof, is disputed, . . . the debt
> collector shall cease collection of the debt, or any
> disputed portion thereof, until the debt collector
> obtains verification of the debt . . . and a copy of
> such verification . . . is mailed to the consumer by
> the debt collector.

Thus, it is quite clear that once a consumer exercises the statutory right to dispute his debt, the debt collector must cease collection activities until providing verification of the debt. See, e.g., Zaborac v. Phillips and Cohen Assoc., Ltd., 330 F. Supp. 2d 962, 966 (N.D. Ill. 2004) (quoting Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997)). Although they do not dispute that they took actions subsequent to Plaintiff's notification of debt, the Veldhuis Defendants contend

18

that they took no action amounting to a debt collection activity.

The relevant chronology is as follows: the Veldhuis Defendants sent an initial demand letter on September 1, 2004, and filed a replevin action and order to show cause in New Jersey Superior Court on September 9, 2004. Defendants received Plaintiff's letter contesting the debt on September 21, 2004. (Veldhuis Cert. ¶ 5.) The following day, September 22, 2004, Defendants responded with a letter informing Plaintiff of their intent to proceed with the replevin action. (Veldhuis Cert. ¶ 7.) The order to show cause hearing was scheduled for November 12, 2004, and required service on Plaintiff within ten days of September 21, 2004. (Veldhuis Cert. ¶ 6.) The Veldhuis Defendants forwarded the order to show cause and the complaint to a process server. The process server was unable to serve Plaintiff and Defendants sent address inquiries to post offices on November 1, 2004, to verify Plaintiff's correct address. (Veldhuis Cert. ¶ 11.) Defendants filed a motion for substituted service and served the motion on Plaintiff by certified mail on November 30, 2004. (Veldhuis Cert. ¶ 13.) Defendants sent Plaintiff a verification of debt on January 27, 2005, (Velhuis Cert., Ex. G.), and ultimately served Plaintiff with the state court replevin action on February 24, 2005.

As a threshold matter, despite Plaintiff's arguments to the contrary, the filing of the replevin action within the thirty day

19

dispute period did not violate § 1692g because it was filed before Plaintiff notified the Veldhuis Defendants of his dispute on September 21, 2004. Sprouse v. City Credits Co., 126 F. Supp. 2d 1083, 1087 (S.D. Ohio 2000) ("[F]iling the collection action before the expiration of 30 days did not constitute an unfair or unconscionable means of collecting a debt."); see also Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1012 (11th Cir. 2004) (holding that FDCPA "does not preclude a debt collector from contemporaneously filing a lien . . . even if the consumer did not first have the opportunity to dispute or verify the debt).

However, a separate issue remains as to whether Defendants unlawfully pursued collection activities in the interim between their receipt of Plaintiff's letter on September 21, 2004, and the provision of the verification of debt on January 27, 2005. In particular, Defendants took action to ascertain Plaintiff's correct address, attempted, but failed, to serve Plaintiff with the complaint and order to show cause, and filed and served a motion to serve Plaintiff by certified mail. Defendants argue that these actions did not amount to "collection practices" and that, save the motion for permission to serve by certified mail, did not affect Plaintiff directly. Defendants also note that their sole activities were those necessary to preserve the lawfully filed replevin action, and are not suggestive of the

20

kind of "abusive debt collection practices" that the FDCPA is intended to address.

The pool of case law concerning the meaning of "collection activity" and the relationship between the FDCPA and debt-related litigation is scant and does not address whether pursuing service in a replevin action filed prior to a notice of dispute violates § 1692g(b). To consider service of process alone a "debt collection activity" is undoubtedly a stretch of the phrase. Moreover, at least one court has concluded that a debt collector need not take any preventative action to forestall the consequences ensuing from a legal action filed before the debtor gave notice of his dispute. Shimek, 374 F.3d at 1012 (holding that debtor's dispute does "not create a duty on the debt collector to prevent Clerk of the Court from recording [a previously filed] lien"). Although involving an affirmative action in this instance, Defendants' efforts to serve Plaintiff to prevent dismissal of the state court litigation can be viewed as little more than an attempt to maintain the status quo of a lawfully-filed suit.

Other courts have also analyzed the FDCPA in a way to prevent its requirements from overly interfering with state law remedies. With respect to another FDCPA provision, the Supreme Court noted that "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an

21

ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." <u>Heintz v. Jenkins</u>, 514 U.S. 291, 296 (1995) (observing that the FDCPA exceptions that permit communications "'to notify the consumer that the debt collector or creditor may invoke' . . . a 'specified remedy' . . . [can be read] plausibly, to imply that they authorize the actual invocation of the remedy that the collector 'intends to invoke'"). Similarly, in <u>McKnight v. Benitez</u>, 176 F. Supp. 2d 1301 (M.D. Fla. 2001), the Court reasoned that because "Congress intended [the FDCPA] to regulate unscrupulous practices of debt collectors and level the playing field for debt collectors who do not use abusive practices," it does not "appear necessary to alter the procedures for filing state lawsuits to level the playing field." <u>Id.</u> at 1305 (holding that complaint does not constitute a "communication" under the FDCPA and reasoning that "if state lawsuits are used in an abusive manner, protection already exists in the court where the action is brought").

Thus, while debt-related litigation is by no means exempt from the effects of the FDCPA, reading the FDCPA to prohibit parties from acting to preserve a previously-filed lawsuit interferes with state remedies in a manner unanticipated by the FDCPA. Accordingly, the Veldhuis Defendants' efforts to serve Plaintiff did not violate the FDCPA.

## 2.   Plaintiff's Additional FDCPA Claims

Plaintiff also alleges that the Veldhuis Defendants violated the FDCPA by failing to provide a verification of debt, by annoying Plaintiff with telephone calls, by communicating with Plaintiff after he disputed the claim, and by tow truck driver Ray's disclosure of Plaintiff's debt information.

A debt collector can be liable under § 1692c(a)(4) of the FDCPA for failing to provide a verification of debt upon request.[3] However, because it is uncontested that Defendants did indeed send Plaintiff a verification of debt on or around January 27, 2005, Plaintiff's claim under § 1692c(a)(4) cannot succeed. To the extent that the verification of debt displays a balance higher than the initial demand letter, all evidence indicates that the higher figure merely includes the attorney's fees accumulated as a result of the replevin action and is therefore consistent with the FDCPA.

The Veldhuis Defendants are also entitled to summary judgment with regard to Plaintiff's claim of "hang-up" phone calls. Although § 1692c(5) does prohibit a debt collector from "[c]ausing a telephone to ring or engaging any person in

---

[3] 15 U.S.C. § 1692c (a)(4) provides:
[I]f the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass," Plaintiff must provide evidence such that a reasonable juror could conclude that such calls were caused by Defendants with an intent to harass. Absent such evidence, Plaintiff's mere allegations of hang up calls is insufficient to survive summary judgment.

Plaintiff also alleges that the Veldhuis Defendants' September 22, 2005, letter violated § 1692c(c), which requires a debt collector to cease further communication with the debtor under certain circumstances. In particular, § 1692c(c) provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

The September 22, 2005, letter was a response to Plaintiff's letter disputing the debt. The letter informed Plaintiff that the Veldhuis Defendants received his notification of dispute and nevertheless intended to continue with the replevin action. Because Plaintiff did not request a cessation of communication and because Defendants' letter served only to notify Plaintiff that Defendants intended to "invoke a specified remedy,"

24

Defendants' letter did not violate § 1692c(c).

Finally, the Veldhuis Defendants are entitled to summary judgment to the extent that Plaintiff raises allegations against them for the actions of the tow truck driver "Ray." The Veldhuis Defendants note that Ray is not their employee, agent, or representative, and they certify that they have no knowledge regarding Ray, and that "[n]o such individual was hired by an employee or representative of this office, nor was any such individual operating under the direction of anyone in this office." (Veldhuis Cert. ¶ 18.) Because there is no evidence that the Veldhuis Defendants have any relationship with Ray such that they could bear any legal responsibility for his alleged actions, their motion for summary judgment will be granted as to all claims against Ray.

### 3.  Conspiracy

The Veldhuis Defendants request summary judgment for Plaintiff's conspiracy claim on the grounds that all other Defendants have received summary judgment on Plaintiff's conspiracy claim and allegations of conspiracy cannot survive against only one party. Defendants argue further that they did not participate in the purchase of the vehicle and therefore cannot have been involved in any conspiracy with regard to the contract. Because this Court already determined in its July Order that Plaintiff failed to state a claim of conspiracy on which

25

relief could be granted, the Veldhuis Defendants' motion is granted.

**4.    RICO**

This Court dismissed the RICO claims against all Defendants, save the Veldhuis Defendants who did not move for dismissal, on the basis that Plaintiff's debt was not "unlawful" for the purposes of the RICO statute. 18 U.S.C. § 1961, <u>et</u> <u>seq</u>. Because this Court has already concluded that Plaintiff has failed to establish a claim under RICO, Defendants' motion for summary judgment of the RICO claim will be granted.

**V.    Plaintiff's Motion for Summary Judgment**

In his motion for summary judgment, Plaintiff alleges conversion, a claim of fraud pursuant to Federal Rule of Civil Procedure Rule 9(b),[4] trover, and other new causes of action. However, these claims were not alleged in the complaint and cannot be raised for the first time in opposition to a motion for summary judgment. <u>See, e.g</u>, <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)."); <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his

---

[4] It is noted that a Federal Rule of Civil Procedure cannot provide the basis for a cause of action.

brief in opposition to a motion for summary judgment."); <u>Fisher</u>

<u>v. Metro. Life Ins. Co.</u>, 895 F.2d 1073, 1078 (5th Cir. 1990); <u>see</u>

<u>also</u> Fed. R. Civ. P. 9(b) (requiring allegations of fraud or

mistake to be "stated with particularity" in the complaint).

Accordingly, Plaintiff's motion for summary judgment will be

denied.

The accompanying Order shall issue today.


Dated:   2-15-06          S/Robert B. Kugler
                          ROBERT B. KUGLER
                          United States District Judge