NOT FOR PUBLICATION                     (Docket Nos. 46, 47, 48)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____ :
                                  :
RAYMOND BEY,                      :
                                  :
            Plaintiff,            :     Civil No. 04-6186 (RBK)
                                  :
        v.                        :     **OPINION**
                                  :
DAIMLER CHRYSLER SERVICES OF      :
NORTH AMERICA, LLC, et al.,       :
                                  :
            Defendants.           :
_____ :

**KUGLER,** United States District Judge:

This matter comes before the Court on motion by Defendants DaimlerChrysler Services North America, LLC, I. Daniel Ibrahim, Tracy Lane, Kim Nguyen, and DaimlerChrysler Corporation ("DaimlerChrysler") for summary judgment of the remaining claim of Plaintiff pro se Raymond Bey ("Plaintiff"), and motion by Plaintiff for relief from all judgments issued by this Court. For the reasons set forth below, DaimlerChrysler's motion will be granted and Plaintiff's motion will be denied.

## I.    Background[1]

_____

[1] The facts provided below are taken in large part from this Court's Opinion of February 15, 2006. As the parties are now intimately familiar with the background and procedural history of this litigation, the facts are not recited here at length except as necessary to aid in understanding this disposition. The Court incorporates by reference the account of undisputed facts in its February 15, 2006, Opinion.

This case arises from Plaintiff's purchase of a 2002 Mercedes-Benz ML 500 SUV ("Vehicle") from Mercedes-Benz of Cherry Hill on December 20, 2001.[2] The total sale price of the Vehicle was $65,258.40, and Plaintiff made a down payment of $10,500.00, leaving a balance of $40,835.90. Plaintiff financed the balance through a retail installment contract ("Contract"), which provided for an annual percentage rate of 11.99%, a finance charge of $13,922.50, and sixty monthly payments of $912.64, beginning February 3, 2002.

After Plaintiff failed to make certain payments, DaimlerChrysler repossessed the Vehicle on or around August 8, 2003. Plaintiff reinstated the Contract shortly thereafter, and regained possession of the Vehicle on August 29, 2003. Plaintiff has made no payments since August 22, 2003, and is presently in default of the loan. DaimlerChrysler subsequently retained the Veldhuis Defendants to institute replevin proceedings on August 31, 2004.

Plaintiff filed suit in this Court on December 16, 2004, raising numerous claims against several defendants. In addition to DaimlerChrysler, Plaintiff named as Defendants, Mercedes-Benz USA, LLC, Mercedes-Benz of North America, and Mercedes-Benz of

---

[2] DaimlerChrysler Services North America, LLC ("DaimlerChrysler"), was assigned the Contract after a merger with Mercedes-Benz Credit Corporation.

Cherry Hill, (collectively, "Mercedes-Benz Defendants"), Lyons, Doughty & Veldhuis, P.C., and Hillary Veldhuis (collectively, "Veldhuis Defendants"), and a tow truck driver named "Ray." Though not entirely clear from the Complaint, Plaintiff alleges conspiracy, fraud, and discrimination, and violation of the Truth in Lending Act ("TLA"), Equal Credit Opportunity Act ("ECOA"), Fair Debt Collection Practices Act ("FDCPA"), and Racketeer Influenced and Corrupt Organizations Act ("RICO").

In its Order of July 8, 2005 ("July Order"), this Court granted in part and denied in part motions to dismiss by DaimlerChrysler and by the Mercedes-Benz Defendants. The Court dismissed all claims against the Mercedes-Benz Defendants, on the grounds that the Mercedes-Benz Defendants' sole connection to the events at issue was that they sold the Vehicle to Plaintiff and none of Plaintiff's claims challenged the propriety of the Vehicle sale itself. The Court also dismissed Plaintiff's claims against DaimlerChrysler for violation of the TLA, ECOA, and FDCPA on the grounds that the TLA and ECOA claims were time-barred and DaimlerChrysler was not a "debt collector" for the purposes of the FDCPA. Lastly, the Court dismissed Plaintiff's RICO and conspiracy claims because Plaintiff did not allege an interest rate amounting to "usurious" under RICO, or a combination of at least two people acting in concert requisite for a conspiracy. The Court found that Plaintiff's claims of fraud and

3

discrimination did state a claim upon which relief could be granted and did not dismiss these claims.

The Court denied Plaintiff's first motion for summary judgment in its Order of August 29, 2005 ("August Order"), because, despite Plaintiff's claims to the contrary, the Contract was not fraudulent on its face. Specifically, the substantial bulk of Plaintiff's claims contend that the $912.64 monthly payment figure is incorrect, reflecting a 12.21% interest rate, rather than the 11.99% listed on the Contract. According to Plaintiff, the amortization of $40,835.90, financed at an annual interest rate of 11.99% over 60 monthly payments should result in a monthly payment of $908.17, not $912.64. However, as explained in both the Court's Opinions of August 29, 2005, and February 15, 2006:

> the $4.47 discrepancy is attributable to the interest accrued during the 45 day period between the initiation of the contract on December 20, 2001, and Plaintiff's first payment on February 3, 2002. The $908.17 figure assumes an initial payment 30 days from the loan date, thereby failing to take into consideration the interest accrued over the course of the additional 15 days.

(February 15, 2006, Opinion at 5-6.)

The Court found that because the $912.64 figure accurately reflected an 11.99% interest rate—given that Plaintiff made his initial payment on February 3, 2002—and because the $912.64 payment figure, the 11.99% interest rate, and the initial payment date of February 3, 2002, were all explicitly provided on the

4

contract, there is no evidence that Defendants committed any fraud. The Court ordered Defendants to file motions for summary judgment of the remaining claims.

In its Opinion and Order of February 15, 2006, the Court denied Plaintiff's motions for recusal, for summary judgment, and for reconsideration of the July Order, granted the Veldhuis Defendants' motion for summary judgment, and granted in part and denied in part DaimlerChrysler's motion for summary judgment. With regard to the Veldhuis Defendants, the Court found that they had no involvement in the events at issue until DaimlerChrysler retained them in August 31, 2004, to conduct replevin proceedings. (See DaimlerChrysler Defs.' Cert., DaimlerChrysler Defs.' Mot. Summ. J., filed Sept. 30, 2005, ¶ 11, 12, 14, 25.) The Court also concluded that the Veldhuis Defendants had not violated the FDCPA.

As to DaimlerChrysler, the Court found that Plaintiff's claim of fraud could not survive since it was established that, contrary to Plaintiff's contentions, the $912.64 monthly payment was accurate in light of the interest accrued in the interim between the inception of the Contract and Plaintiff's initial payment. However, the Court denied DaimlerChrysler's motion to dismiss Plaintiff's claim of discrimination because DaimlerChrysler did not address Plaintiff's allegations that it charged him a higher interest rate because he is African

American.

DaimlerChrysler now moves for summary judgment of Plaintiff's claim that the his 11.99% interest rate was the product of a discriminatory "mark up." Although Plaintiff did not file an opposition to Defendant's motion, Plaintiff subsequently moved for relief from all judgments of this Court.

## II. Plaintiff's Motion for Relief from Judgment

On March 31, 2006, Plaintiff filed a motion described as "a motion for relief from judgments voiding all judgments of Judge Robert B. Kugler."[3] Plaintiff raises Federal Rule of Civil Procedure ("Rule") 60(b)(3), (4), and (6) in support of his motion.

## A.   Standard for Relief from Judgment

Rule 60(b) permits Courts to relieve parties "from a final judgment, order, or proceeding": (3) for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party"; (4) where "the judgment is void;" or (6) for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b).

The Third Circuit has "cautioned that relief from a judgment

---

[3] In his cover letter, Plaintiff notes that he has, or intends to, file formal complaints against Judge Kugler, Judge Ann Marie Donio, Judge Jerome B. Simandle, and Judge Joseph H. Rodriguez, and therefore objects to any of these judges addressing the present motion.

under Rule 60 should be granted only in exceptional circumstances." <u>Logan v. American Contract Bridge League</u>, Slip Copy, 2006 WL 565654 (3d Cir. 2006) (quoting <u>Boughner v. Sec'y of HEW</u>, 572 F.2d 976, 977 (3d Cir. 1978)); <u>Pridgen v. Shannon</u>, 380 F.3d 721, 728 (3d Cir. 2004) ("[L]egal error does not by itself warrant the application of Rule 60(b). To obtain relief under Rule 60(b)(3), "the moving party must establish that the adverse party engaged in fraud or other misconduct, and that this misconduct prevented the moving party from fully and fairly presenting his case." <u>Project Mgmt. Inst., Inc. v. Ireland</u>, 144 Fed. Appx. 935, 937 (3d Cir. 2005) (citing <u>Stridiron v. Stridiron</u>, 698 F.2d 204, 206-07 (3d Cir. 1983)).

To invoke Rule 60(b)(4), the Plaintiff must demonstrate that the judgment is void. A "void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack." <u>Lubben v. Selective Serv. Sys. Local Bd. No. 27</u>, 453 F.2d 645, 649 (1st Cir. 1972). In particular, a "void judgment is one which, from its inception, was a complete nullity and without legal effect," for example, where the Court lacks subject matter jurisdiction or where service was never effected on a party. Wright & Miller, <u>11 Fed. Prac. & Proc. Civ. 2d</u> § 2862. "In the interest of finality, the concept of void judgments is narrowly construed." <u>Id.</u>; <u>see also</u> <u>Virgin Is. Bldg. Spec., Inc. v. Buccaneer Mall Assoc., Inc.</u>, 197 F.R.D. 256, 258 (D.V.I.

2000) (denying 60(b) motion because "[a]ppellants present no cognizable argument why the judgment was void in this case, other than the fact that the result did not go their way").

**B.   Plaintiff's Discovery Arguments**

Although Plaintiff's contentions are not entirely clear,[4] most of his claims are related to the adjudication, or lack thereof, of discovery issues between the parties. In particular, Plaintiff argues that Defendants' failure to provide discovery in response to a "Request for Admissions and Request for Documents" filed July 21, 2005, constituted "fraud, misrepresentation, or other misconduct" that prevented Plaintiff "from fully and fairly presenting its case during trial." (Pl. Mot., Mar. 31, 2006, at 2, 3.) Plaintiff claims that Defendants falsely stated that they were unable to produce requested documents when they actually produced those documents in a separate state court proceeding.

In support of his allegations, Plaintiff attached to his brief the document produced in the state court litigation. This

---

[4] Plaintiff's brief takes the form of approximately seven single-spaced pages, in contravention of Local Civil Rule 7.2(d), which provides that "[e]ach page of a brief shall contain double-spaced text and/or single spaced footnotes or inserts." L. Civ. R. 7.2(d). The Court will nevertheless permit the brief to stand.

Additionally, Plaintiff's brief does not include page numbers. For ease of reference, this Court will refer to the eight pages of the brief as pages 1 through 8, with page 1 allocated to the page entitled "BRIEF."

document, entitled "MBF Retail Acquisitions/Days to First Payment
by Dealer State," (Pl. Mot., Mar. 31, 2006, at Ex. A), is not
equivalent to the documents requested in Plaintiff's Request of
July 21, 2005. Rather, Plaintiff demanded production of evidence
such as "information relative to elapsed time between the
contract date and the first payment date broken down by race."
(Def. Opp'n at 2; see Def. Opp'n Pl. Mot. Compel, filed Sept. 19,
2005, Ex. B. at ¶ 13.) Defendants assert that such information
could not be obtained, and Plaintiff has not demonstrated this
assertion to be false. Plaintiff's allegations of fraud are
therefore unsubstantiated.

Plaintiff further contends that the Court erred in failing
to consider the pending discovery motions, including his motion
to compel, filed September 6, 2005, his motion for default, filed
September 12, 2005, and his motion to strike and for sanctions on
September 28, 2005. (Pl. Mot., Mar. 31, 2006, at 3, 4.) In
particular, Plaintiff argues that it "was a violation of
Plaintiff's due process rights" and a violation of "a state
[court] ruling in New Jersey" to rule on Defendants' motions for
summary judgment before deciding the pending discovery motions
and before the completion of discovery. (Pl. Mot., Mar. 31, 2006,
at 4, 7.) Plaintiff claims that by filing their motion for
summary judgment before discovery was closed, Defendants "did
break the law." (Pl. Mot., Mar. 31, 2006, at 7.)

Plaintiff's arguments are without merit. The Court has considerable discretion to determine when and in what order it will consider motions, and "[a] party claiming abuse of that discretion has a heavy burden of persuasion." Hoptowit v. Spellman, 753 F.2d 779, 782 (9th Cir. 1985) ("[W]hen two or three motions are presented to a court, it has discretion to decide the order in which it would consider and decide them.").

Moreover, the law of this Court does not in any way prohibit the filing or determination of summary judgment motions prior to the close of discovery. Rather, Rule 56(b) provides that a defendant may move for summary judgment "at any time." Fed. R. Civ. P. 56(b). If Plaintiff believed Defendants' motions to be premature, Rule 56(f) afforded the appropriate remedy, permitting parties opposing summary judgment to file an affidavit, to provide the court an opportunity to "refuse the application for judgment or . . . order a continuance to permit affidavits to be obtained or deposition to be taken or discovery to be had." Fed. R. Civ. P. 56(f). Pastore v. Bell Telephone Co., 24 F.3d 508, 511 (3d Cir. 1994) (holding that the Rule 56(f) affidavit must set forth "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained") (quoting Dowling v. City of Phila., 855 F.2d 136, 140 (3d Cir. 1988)).

Although pro se plaintiffs are entitled to a certain degree

of leniency, Plaintiff declined to submit either an affidavit or a timely opposition to Defendants' motions for summary judgment. Moreover, as of the present filing, Plaintiff has yet to describe any discoverable information that would have altered the outcome of Defendants' motions or otherwise precluded summary judgment.[5] Plaintiff has not set forth any indication that the motions for summary judgment were wrongly decided or that he is otherwise entitled to relief from judgment.

## C.   Plaintiff's Due Process Claims

Plaintiff claims that the lack of hearings on motions in this case constitutes a due process violation. (Pl. Mot., Mar. 31, 2006, at 3, 4.) However, as Rule 78 clearly authorizes, "[t]o expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." Fed. R. Civ. P. 78; see e.g., Total Packaging Corp. v. Tenneco Packaging Corp., 2004 WL 758240 (D.N.J. 2004). The Court considered all briefs in its adjudication of the

---

[5] Plaintiff argues that the requested discovery was necessary to show that "the markup of payments by extending the first payment date is a national program and used extensively in New Jersey." (Pl. Mot., Mar. 31, 2006, 1.) Although not entirely evident, Plaintiff appears to be claiming that there is something unlawful about setting an initial payment date over thirty days after the inception of the contract, even in a situation such as Plaintiff's when the initial payment date is explicitly set forth in the contract. However, Plaintiff has not proffered any cognizable legal grounds for such a theory.

motions before it, and Plaintiff was afforded all of the due process to which he was entitled.

Similarly, Plaintiff argues that this Court wrongfully held that Plaintiff's brief of July 7, 2005, was too late to defend against the Defendants' motions to dismiss of February 15 and 18, 2005. In particular, Plaintiff reasons that Federal Rule of Civil Procedure 12(h)(2) should have guided the deadline for submission of Plaintiff's opposition to Defendants' motion instead of Local Civil Rule 7.1. (Pl. Mot, Mar. 31, 2006, at 5, 7.) However, Rule 12 has no bearing on the timing of briefs in opposition to motions.

Plaintiff also claims that the Court's "assertion that Plaintiff does not oppose Defendants' arguments [in the Veldhuis Defendants' motion for summary judgment] is false." (Pl. Mot., Mar. 31, 2006, at 6.) However, he concedes that "Plaintiff did not oppose the motion for summary judgment . . . because it was submitted when Discovery motions were filed and not heard or ruled on." (Pl. Mot., Mar. 31, 2006, at 6.) Plaintiff therefore concedes that he filed no opposition, and his grounds for claiming that he did oppose Defendants' motion are unclear.

## D.   **Plaintiff's Factual Arguments**

Plaintiff alleges that the Court made numerous errors of fact. However, as provided in detail below, no evidence supports Plaintiff's arguments.

Plaintiff contends that the Court erroneously stated in the Background section of one of its Opinions that the "Veldhuis Defendants sent Plaintiff a demand letter on September 1, 2004 and filed a Complaint and Order to Show Cause with the Superior Court of New Jersey on September 7, 2004." Plaintiff now argues that "[b]oth are untrue because Plaintiff never received any demand letter on September 1, 2004 and the complaint was filed September 9, 2004." (Pl. Mot., Mar. 30, 2006, at 3.) However, Plaintiff does not explain how these alleged misstatements are material, nor has he established that these statements are incorrect. In fact, Plaintiff himself stated in his first motion for summary judgment, "On September 1, 2004, Hillary Veldhuis send [sic] a debt collection letter." (Pl. Mot. Summ. J., filed May 27, 2005, at 10.) Plaintiff may not now alter his version of the facts to intimate falsity on the part of the parties or the Court.

Plaintiff also claims that "Judge Kugler fraudulently set the contract date at December 20, 2001 which is blatant perjury." (Pl. Mot., Mar. 31, 2006, at 5.) However, there is no evidence supporting Plaintiff's claim that the Contract was initiated on December 21. The Contract itself clearly provides that it was signed and dated on "12/20/2001." (DaimlerChrysler Mot. Summ. J., filed Sept. 30, 2005, at Ex. A.) Furthermore, in his Complaint, Plaintiff himself stated that he "signed a purchase agreement on

12/20/2001 with Defendant."[6] (Compl., filed Dec. 16, 2004, at 2.)

Plaintiff asserts also that "in dismissing [] Plaintiff's FDCPA claim, the Judge held that Plaintiff provided no evidence that Defendants filed a lawsuit against Plaintiff before September 20, 2004." (Pl. Mot., Mar. 31, 2006, at 4, 7.) Plaintiff contends that he did indeed provide evidence in his motion for summary judgment that Defendants initiated a lawsuit on September 9, 2004. Plaintiff claims that his motion provided:

> The debt collector Hillary Veldhuis certified the complaint on September 2, 2004 (Exhibit B) and filed the complaint on September 9, 2004 (Exhibit C). So before Defendant received the initial collection letter and had a chance to dispute the charges, a lawsuit was filed against him in Superior Court."

(Pl. Mot., Mar. 31, 2006, at 4.)

However, Exhibit B to Plaintiff's motion for summary judgment of May 27, 2005, is a letter to the editor of the Philadelphia Inquirer, and Exhibit C is a copy of Plaintiff's financing agreement. These documents do not constitute evidence that a complaint was filed in court on September 9, 2004, and it is unclear to what evidence Plaintiff is referring.

Accordingly, Plaintiff's contentions of factual error are without merit.

**D.   Plaintiff's Legal Arguments**

---

[6] Plaintiff is hereby warned that any further misrepresentations to this Court may result in sanctions pursuant to Rule 11(c).

Plaintiff argues that the Court erred in finding that the Veldhuis Defendants did not violate the FDCPA when they did not send Plaintiff a verification of debt within seven days after Plaintiff disputed his debt. (Pl. Mot., Mar. 31, 2006, at 3.) However, a debt collector need not send a verification of debt at all, so long as the collector ceases collection activity. 15 U.S.C. § 1692g; Jang v. A.M. Miller and Assoc., 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.") (citing Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1031 (6th Cir. 1992)). Failure to submit a verification after seven days does not, therefore, amount to an FDCPA violation.

Plaintiff also argues that the Court wrongfully denied his motion for recusal. In particular, he contends that as soon as "Plaintiff questioned his impartiality and called him a liar in his motion to recuse, . . . Integrity should have made Judge Kugler refrain from ruling on any more pleadings of Plaintiff." (Pl. Mot., Mar. 31, 2006, at 7.) Plaintiff also contends that the Court wrongfully addressed only Plaintiff's allegations of racism, when Plaintiff actually grounded his motion for recusal on "perjury," since Plaintiff's motion for recusal "clearly

states that Judge Kugler blatantly lies."[7] (Pl. Mot., Mar. 31, 2006, at 5.)

As Plaintiff notes, the Court erroneously referred to a passage from Plaintiff's motion as the "entirety" of the motion, failing to include the passages labeled "exhibits" as part of the motion. In any event, Plaintiff's arguments, in both the body of his motion and the attached "exhibits," amount to frustrations with this Court's legal determinations and the disposition of his case. Specifically, in addressing Plaintiff's motion for recusal, the Court found that:

> The thrust of Plaintiff's request for recusal appears to be his belief that the Court's actions in the adjudication of his case were tainted by racial bias. To support his accusations of racism, Plaintiff points to the Court's Opinions granting and denying in part Defendants' motions to dismiss and denying Plaintiff's motion for summary judgment, the Court's Order to the Defendants to file motions for summary judgment, the cancellation of the scheduled Rule 26 conference by Magistrate Judge Ann Marie Donio, and the absence of any hearings or oral argument on any matter presented in his case.
>
> Although the possibility of racism in the judicial system is not to be taken lightly, Plaintiff's dissatisfaction with the procedural disposition of his

---

[7] Specifically, Plaintiff is referring to his argument in his motion for recusal, providing that "Judge Kugler blantantly lies" in denying Plaintiff's FDCPA claim for failure to provide evidence that Defendants filed a lawsuit prior to September 20, 2004. (Pl. Mot. Recusal, at page labeled "7 of 9" on the electronic docket).  However, as discussed previously, the Plaintiff identified no exhibits indicating that suit was initiated prior to September 20, 2004, and the exhibits to which he cites cannot support his claim. Plaintiff has therefore not established that the Court was incorrect in its prior statement.

lawsuit is not grounds for recusal. As the Third
Circuit observed, "[b]ecause the focus is on the source
of the judge's views and actions, 'judicial rulings
alone almost never constitute a valid basis for a bias
or partiality motion.'" <u>In re Community Bank</u>, 418 F.3d
at 320 (noting that even "judicial remarks during the
course of a trial that are critical or disapproving of,
or even hostile to, counsel, the parties, or their
cases, ordinarily do not support a bias or partiality
challenge"). Plaintiff has identified no facts
indicative of a racial motivation or bias by the Court,
nor has he set forth any fact suggesting that this
Court has treated his case differently than it would
treat any other case under the circumstances. Because
Plaintiff's allegations appear to be mere conjecture
that would not inspire a reasonable person to "harbor
doubts" of the Court's impartiality, Plaintiff's motion
for recusal will be denied.

(Op., Feb. 15, 2006, at 9-10.)

Regardless of whether Plaintiff alleged  perjury or racism,
he did not set forth any facts that would "give fair support to
the charge of a bent of mind that may prevent or impede
impartiality of judgment," <u>Cooney v. Booth</u>, 262 F. Supp. 2d 494,
501 (E.D. Pa. 2003)(quoting <u>Berger v. United States</u>, 255 U.S. 22,
33-34 (1921)), or cause "a 'reasonable man . . . harbor doubts
about the judge's impartiality,'" <u>In re Community Bank of No.
Virginia</u>, 418 F.3d 277, 320 (3d Cir. 2005) (quoting <u>United States
v. Antar</u>, 53 F.3d 568, 574 (3d Cir. 1995)). Plaintiff's
contentions are grounded either in incorrect recitations of the
facts, as explained more thoroughly above, or constitute legal
arguments more properly addressed in an appeal to the Third

17

Circuit than in a motion for recusal.[8] In any event, Plaintiff is not entitled to recusal.

Because Plaintiff's arguments lack merit, his motion for relief from judgment will be denied.

## III. DaimlerChrysler's Motion for Summary Judgment

## A.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to

---

[8] Plaintiff's argument that the Court should refrain from ruling on a motion for recusal is clearly erroneous. See Cooney v. Booth, 262 F. Supp. 2d 494, 501 (E.D. Pa. 2003) ("As a threshold matter, the presiding judge must determine whether the facts alleged are legally sufficient to support a charge of bias or prejudice.").

establish an essential element of the nonmoving party's case. Id. at 331. Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## B.   Motion

DaimlerChrysler argues that it is entitled to summary judgment of Plaintiff's claim that he was charged a higher, discriminatory interest rate on the basis of his race. Plaintiff has not filed an Opposition.

In support of its motion, DaimlerChrysler asserts that Plaintiff's race is not set forth on his Credit Application and therefore there was no means for DaimlerChrysler to know Plaintiff's race before establishing the applicable interest rate for his loan. In support, DaimlerChrysler provides a certified copy of Plaintiff's credit application, confirming that Plaintiff's race is not noted anywhere on the document.

DaimlerChrysler also proffers the Certification of Matthew Zani, an agent of DaimlerChrysler. In his Certification, Zani attests that the interest rate of 11.99% "is comparable to interest rates offered for other contracts issued at that time, in that region of the country, based on the credit score of the

applicant." (Zani Cert., filed Feb. 28, 2006, at ¶ 7.)

Because all evidence indicates that Plaintiff's interest rate was calculated without reference to his race, and no evidence suggests that Plaintiff's race played any role in reaching the 11.99% figure, DaimlerChrysler is entitled to summary judgment of Plaintiff's claim that he received a discriminatory "marked up" interest rate.

## IV.  Defendant "Ray"

Rule 4(m) instructs courts to dismiss suits where "service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint" unless "the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m); Abdel-Latif v. Wells Fargo Guard Svc., Inc., 122 F.R.D. 169, 171 (D.N.J. 1988). Despite the relaxed treatment accorded pro se complaints, the Court has no power to adjudicate a suit over defendants who have not been properly served. Jones v. Frank, 973 F.2d 872 (10th Cir. 1992) (upholding dismissal of pro se suit for insufficient service of process); Townsel v. Contra Costa County, 820 F.2d 319 (9th Cir. 1987) (same).

Plaintiff filed his Complaint against all Defendants on December 16, 2004. Plaintiff attempted to serve Defendant "Ray," a tow truck driver who allegedly participated in the attempted repossession of Plaintiff's vehicle, by certified mail at the address of Defendant Lyons, Doughty, & Veldhuis, PC.

Rule 4(e) establishes the sole avenues for effecting service upon individual defendants. Individuals may be served by delivering the summons "to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode." Fed. R. Civ. P. 4(e). Mailing the summons and Complaint to the office of another defendant is insufficient, particularly where, as here, no evidence indicates that the defendant received the mail. Accordingly, Defendant "Ray" has not been served for the purposes of Rule 4. Because the above-captioned suit was filed December 16, 2004, the 120 day period provided by Rule 4(m) has long since expired.

Before dismissing a suit for insufficient service of process, however, the court should first "determine whether good cause exists for an extension of time." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305-06 (3d Cir. 1995). Good cause requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995) (holding that "good cause" is the same standard as "excusable neglect" under Rule 6(b)(2)) (citing Petrucelli, 46 F.3d at 1312). "The burden of establishing excusable neglect is upon the appellant, even one proceeding pro se." Kersh v. Derozier, 851 F.2d 1509, 1512 (5th Cir. 1988) (quoting Birl v.

Estelle, 660 F.2d 592, 593 (5th Cir. 1981) (citations omitted)).

A pro se litigant's unfamiliarity with the rules does not constitute good cause sufficient to excuse a failure to timely serve process. Kersh, 851 F.2d at 1512 ("To hold that a pro se litigant's ignorance of [the Rules] excuses his compliance with the [Rules] would automatically excuse his failure to serve his defendants timely."); Townsel, 820 F.2d at 320 ("To hold that complete ignorance of Rule 4 . . . constitutes good cause for untimely service would allow the good cause exception to swallow the Rule."). Consequently, Plaintiff's misreading of the Rules does not amount to good cause for his failure to serve Defendant "Ray."

Although the Court may still exercise its discretion to provide Plaintiff with an extension of time, this Court declines to do so here. In weighing whether to exercise this discretion, courts look to (1) whether the plaintiff's Complaint is frivolous, (2) the plaintiff's motivation in "pursuing its claim (both in the factual and legal components of the case)," (3) objective unreasonableness, and (4) the need to "advance considerations of compensation and deterrence." Ritter v. Cooper, 2003 WL 23112306, *3 (D. Del. 2003) (citing E.I. Du Pont De Nemours & Co. v. The New Press, Inc., 1998 WL 355522, *4 (E.D. Pa. 1998)); see also Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986). Plaintiff's sole claim against Defendant

"Ray" is for violation of the FDCPA on the grounds that "Ray the tow truck driver . . . proceeded to completely discuss the debt alleged owed to Plaintiff with a third party" in violation of the FDCPA prohibition of "[a]ny debt collector communicating with any person other than the consumer." (Pl. Compl. at 9.) Because "Ray" is not a "debt collector" for the purposes of 15 U.S.C. § 1692a(6), the Complaint clearly does not state a claim against Defendant "Ray." Moreover, Plaintiff has made no effort to pursue his claims against "Ray," who has not responded to the Complaint or otherwise appeared in this suit, since the initial filing of the Complaint. Accordingly, Plaintiff will not be granted additional time to properly effectuate service. Defendant "Ray" will be dismissed for improper service pursuant to Rule 4(m).

The accompanying Order shall issue today.


Dated: 5-15-06                    S/Robert B. Kugler
                                  ROBERT B. KUGLER
                                  United States District Judge

23